IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TAMMY A. CAGLE,
    Plaintiff,

v.                                          No:  3:07cv189/MCR/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____

## REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Cagle's application for disability insurance benefits under Title II of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

    Plaintiff filed an application for disability insurance benefits claiming an onset date of March 15, 1998, later amended to January 1, 2000.  The application was denied initially and on reconsideration and plaintiff requested a hearing before an

Administrative Law Judge (ALJ). A hearing was held on July 14, 2005 at which plaintiff was represented by counsel and testified. The ALJ rendered an unfavorable decision on February 23, 2006 (tr. 16-22) and the Appeals Council declined review (tr. 4-8), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe conditions of fibromyalgia/hypertension and affective mood disorder, but did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix One, Subpart P, Regulations No. 4; that her testimony concerning her pain and functional limitations was only partially credible; that she had the residual functional capacity to perform the full range of light work and could return to her past relevant employment as an advertising director; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber*

*v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The earliest entry in plaintiff's medical record is dated April 14, 1999 when she was seen by Richard Stachler, M.D., a family practitioner. Plaintiff had been seeing Dr. Stachler for some time but any earlier record of treatment is not in the administrative record. The April 14, 1999 visit was for the purpose of a pre-operative physical because plaintiff was going to have surgery to relieve sinus congestion. Dr. Stachler noted a past medical history of chronic headache, dysthymia, recovering from alcoholism, high cholesterol, and elevated blood pressure. At the time plaintiff was taking Effexor, Verelan, and Elavil. Dr. Stachler noted a long history of muscle weakness diffusely, but plaintiff at that time denied joint stiffness, arthralgias, joint swelling or any family history of arthritis. Dr. Stachler also noted that plaintiff suffered from depression, had difficulty enjoying life, difficulty in concentrating and poor quality of sleep. Her physical examination was unremarkable. Dr. Stachler's impression was recurrent sinus infection, possible chronic fatigue, myofascial pain syndrome, recovering alcoholic, and depression/anxiety (tr. 336-337). A week later, on April 20, 1999, Thomas Schneider, M.D., performed a bilateral inferior turbinoplasty with partial resection and

outfracture of the turbinates (tr. 163).[1]  The surgery was unremarkable but did not completely resolve plaintiff's problems with her sinuses.  A year later Dr. Schneider noted that plaintiff's nasal passages were clear but plaintiff still complained of facial pressure and pain (tr. 157).  He was not willing to prescribe Percoset, which plaintiff indicated helped, but instead prescribed Pannaz, an antihistamine, plus a combination of two nasal sprays, one of which contained synthetic steroids (*id.*).  Dr. Schneider requested a CT scan of plaintiff's sinuses, which was read on April 26, 2000 as normal (tr. 156).

In the meantime, Dr. Stachler referred plaintiff to Dr. Jeffrey Pierce, an orthopedic surgeon, who saw her on July 15, 1999.  Plaintiff's physical examination was unremarkable other than point tenderness in the paraspinous cervical region on the left with some pain that improved with massage.  Plaintiff's range of motion in her neck was full with no limitations.  Dr. Pierce's assessment was left cervical strain with uncertain history but possible history of trauma to the neck in the remote past, sinusitis, depression, and alcoholism.  Dr. Pierce noted that he was particularly concerned about plaintiff's prescription drug use, especially Percoset and Elavil given her history of alcoholism.  Dr. Pierce did not think that there was any indication for physical or occupational therapy (tr. 153-155).  An MRI of plaintiff's cervical spine taken on July 30, 1999 was read as showing a "very small disc bulge at C5-6, centrally and slightly toward the right, of questionable significance."  (Tr. 335).

Dr. Stachler was plaintiff's primary care physician, saw her regularly from March 2000 through at least July 2005, and treated her for headaches, neck pain, anxiety, myofascial pain syndrome and depression.  He also treated her for common medical problems such as colds and bronchitis (tr. 261-330, 350-357).  In July 2000,

---

[1] This surgery generally involves removal of the lower turbinates, scroll-shaped bodies that extend into the sides of the nasal passages and act to warm, humidify and filter air before it passes into the lungs.

Dr. Stachler referred plaintiff to John Leutkemeyer, M.D. for evaluation of her myofascial pain syndrome. Plaintiff indicated that her pain, on a scale of 1 to 10, with 10 being the worst, was a 4½. She described herself as a recovering alcoholic but drank 10 ounces of wine at night. She indicated she was having a good day. On physical examination she had full range of motion in her neck with no pain, her joints were within normal limits with no swelling, no loss of range of motion, she was slightly tender over the paravertebral muscles of the cervical spine but there was otherwise very little tenderness on examination. Her neurological examination was normal. Dr. Leutkemeyer's assessment was myofascial pain syndrome as previously diagnosed and compatible with her history. Her current clinical findings were compatible with a beneficial response to her medications and no change was recommended (tr. 165-166).

Dr. Stachler filled out several forms concerning plaintiff's condition. The first, a clinical assessment of pain form, indicated that plaintiff was in pain to the extent that she could not work and that her medications had side effects which would prevent her from working (tr. 256). On the second form, concerning plaintiff's residual functional capacity, Dr. Stachler indicated that plaintiff was markedly limited in every category of life, but that her symptoms varied tremendously and that she would go from full functioning to totally incapacitated (tr. 257-258). Two weeks later, Dr. Stachler filled out a physical capacities evaluation form which indicated that plaintiff could sit, stand and walk for two hours at a time and for three hours total during an eight hour day, that she could lift up to five pounds occasionally, could not use her hands, arms or legs for grasping, pushing, pulling or fine manipulation, could not squat, bend, crawl, climb, reach (tr. 259). Finally, on July 26, 2005 Dr. Stachler wrote a letter To Whom It May Concern stating that plaintiff had numerous medical problems at least since the mid 1990's; that the symptoms were intermittent and at times disabling and included myofascial pain syndrome with cervical pain and

pain over the left side of her face, headache, weakness and malaise; that as a result of the symptoms she developed anxiety and depression; that her main symptom was intermittent disabling fatigue; that because of the sporadic nature of her symptoms it was impractical to provide a physical capacity evaluation documenting what she might be able to tolerate regarding work ability; and that at times she had the energy to work but at other times, she did not, and it was very difficult to provide any prediction of work capacity (tr. 359).

Plaintiff was examined at the request of the state agency by Douglas Bond, D.O., on August 19, 2003. He noted a chief complaint of myofascial pain since 1998 with pain primarily in the upper left quadrant of her body. There was full range of motion, no pain and no muscle atrophy on physical examination. Plaintiff was neurologically normal but was unable to do the heel walk due to weakness and balance problems. Dr. Bond's assessment was myofascial pain syndrome resistant to multiple modes of therapy, plateau, history of hypertension, currently not controlled, and perennial allergies (tr. 176-177). The state agency also referred plaintiff to Brett Turner, Ph.D. a psychologist, for evaluation on August 11, 2003. Plaintiff gave a history of depression beginning in 1998, complicated by her medical conditions. She also reported migraine headaches since 1990 and severe sinus problems. Her mental status examination was not particularly remarkable other than a notation of a mildly depressed mood and a dysphoric affect. She had no deficiencies of concentration and was able to follow simple two-step commands. Her interaction with others appeared to be appropriate for brief periods. Concentration, persistence and pace with daily activities were mildly impaired but her activities appeared to be self initiated. When performing specific tasks, her behavior appeared to be goal directed and she was able to maintain concentration to see tasks through to completion without supervision. Dr. Turner's diagnosis was major depressive disorder and alcohol dependence in full remission. He felt that her

prognosis was guarded but her ability to do work-related activities as they relate to capacity for understanding and memory was good, for sustained concentration was fair, and for adaptation and ability to tolerate stress in the work environment was poor.  Her social interaction and functioning appeared to be poor as well, and Dr. Turner felt it was unlikely she would be able to cope with the mental demands associated with working.  Dr. Turner recommended that the plaintiff be referred to a psychiatrist for psychopharmacological evaluation and possible psychotherapy (tr. 171-175).

After the hearing, plaintiff was referred to Daniel Bader, M.D., a neurologist and psychiatrist, for a neurological examination.  Dr. Bader reviewed various medical records and received a history consistent with that noted above.  On physical examination plaintiff's neck was supple, her gait and station were normal, her muscle strength and tone were normal, she was awake, alert and oriented with clear speech and normal attention span.  Dr. Bader's impression was "multiple symptoms reported by patient with unremarkable/normal neurological examination." (Tr. 361-364).  Dr. Bader filled out a form concerning plaintiff's ability to do work-related activities and indicated that she could lift up to 25 pounds occasionally, less than ten pounds frequently; that she had no impairments in standing or walking, sitting, pushing or pulling, and that she was unable to move machinery "by her description."  Finally, Dr. Bader noted that "there are no objective medical abnormalities at this time."  (Tr. 365-368).

Shortly thereafter plaintiff was seen by Martha Sarasua, M.D., for psychiatric evaluation.  Plaintiff gave a consistent medical history, indicated she had abused alcohol in the past but had been sober since 1997, that she was separated from her husband and that a divorce was pending.  She reported that she had a bachelors degree in art with a minor in advertising and had worked as an artist and graphic designer for ten years.  However, she had not worked since January of 2000.

Plaintiff's mental status examination was unremarkable and Dr. Sarasua's diagnostic impression was major depression recurrent, mild, and pain disorder associated with both psychological factors and general medical condition. She assigned a GAF of 50 (tr. 374-376). She felt that plaintiff's primary functional limitations were due to her physical condition. Plaintiff noted cognitive problems but on mental status examination she showed normal cognition. Plaintiff's depression had never been severe enough to cause psychosis, suicidal ideation or to warrant psychiatric hospitalization, and was being appropriately treated with antidepressant medications by her primary care physician. Dr. Sarasua did not feel any further psychiatric care was necessary (tr. 374-377).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to find her presumptively disabled under the medical/vocational guidelines, in failing to address her mental limitations generally, in rejecting the opinion of her treating physician, and in improperly discounting her subjective complaints of pain, and that plaintiff was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Presumptive disability.</u>

Plaintiff first contends that the ALJ erred in not finding her presumptively disabled. Plaintiff argues that she met the requirements of listing 12.04 during the relevant time period, and therefore should have been held disabled without more. The regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out

specific physical and mental conditions that are presumptively disabling. If a claimant meets the requirements of one of the listings, no further proof of disability is required. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Listing 12.04 deals with Affective Disorders, and in order to meet the listing, numerous limitations must be present. Relevant here are conditions that plaintiff contends Dr. Sarasua found, but which were ignored by the ALJ. Specifically, plaintiff argues that Dr. Sarasua found fatigue, feelings of guilt, difficulty concentrating, withdrawal from social contact, and compulsive picking at her hair, skin and clothes, and that these problems, when added to other relevant findings, are sufficient to meet listing 12.04. However, plaintiff has misconstrued Dr. Sarasua's report. Dr. Sarasua did not find the above-listed conditions to be present. She noted only that the plaintiff's told her that they existed. Her conclusion was that plaintiff's major depression was mild and was being appropriately treated with medication.

Plaintiff further contends that Dr. Turner's finding of poor social interaction supports her position. However, to meet the listing as to social functioning, the limitation must be "marked," not "poor." Dr. Turner explained his "poor" rating by finding that plaintiff had only a moderately active social life but was able to maintain several close friendships (tr. 173). This is not a limitation that would "seriously interfere" with the plaintiff's ability to function independently, appropriately and effectively on a sustained basis, as required by the listing. *See* § 12.00C(2). The ALJ did not err in not finding plaintiff to be presumptively disabled.

2. <u>Mental Limitations.</u>

Plaintiff next contends that, regardless of the listings, her overall mental status was disabling, and the ALJ failed to rate her overall mental functioning. The regulations provide that the Commissioner must use a documented technique to rate a claimant's degree of functional limitations in four broad functional areas: activities

of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c). An ALJ no longer has to attach a Psychiatric Review Technique Form (PRTF) to the written decision, but his decision must incorporate pertinent findings and conclusions based on the "technique" described in the regulations. *See* 20 C.F.R. § 404.1520a(e)(2). "Where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005).

Here the ALJ referred to a January 20, 2004 PRTF prepared by a state consultant in evaluating plaintiff's mental impairments (tr. 21). He noted the PRTF showed that based on the "B" criteria, plaintiff had only mild functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace, and that there were no limitations for decompensation (tr. 21). Thus, the ALJ clearly rated plaintiff's functional limitations in the appropriate areas and properly incorporated the pertinent findings and conclusions based on the "technique" into his written decision. The ALJ did not err in evaluating plaintiff's mental impairments under the regulations and his finding should be affirmed.

3.  **Treating physician.**

Plaintiff next contends that the ALJ erred in not crediting the opinion of her treating physician, Dr. Stachler. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Stewart, supra; Lewis, supra.; Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir.

1984).  In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> **The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . . Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.**

786 F.2d at 1053.  The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician.  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).  *Compare, Wilson v. Heckler, supra*.

The ALJ considered Dr. Stachler's opinion, but noted that his two reports were internally inconsistent, and were not supported by his medical records. The ALJ also noted that Dr. Stachler himself admitted that it would be impractical for him to provide a physical capacities evaluation given plaintiff's intermittent symptoms (tr. 20).  The ALJ's findings were supported by substantial record evidence.  Dr. Bader placed no significant restrictions on plaintiff activities, and the ALJ was legally justified in relying on Dr. Bader's findings.  Plaintiff is not entitled to reversal on this ground.

4.      <u>Subjective complaints of pain.</u>

Finally, plaintiff contends that the ALJ erred in not crediting her subjective complaints of pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". .

. unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561

---

[2]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

(11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen,* 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan,* 921 F.2d at 1223; *MacGregor v. Bowen,* 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services,* 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms

and complaints").³  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the ALJ found that plaintiff had severe impairments, but noted no objective medical evidence to support the claimed severity of plaintiff's condition (tr. 19-21).  The MRI findings on plaintiff's cervical spine were mild at worst, and there were no other supportive medical findings–only plaintiff's generally subjective complaints. Moreover, neither Dr. Bader nor Dr. Bond found anything of any medical substance.  Finally, as the ALJ noted, plaintiff's pain was generally well-controlled by medication (tr. 20).  Plaintiff is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

---

³ Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

**At Pensacola, Florida this 31st day of March, 2008.**

/s/ *Miles Davis*
      **MILES DAVIS**
      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:07cv189/MCR/MD*